**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NOVO NORDISK A/S AND NOVO
NORDISK INC.,

        *Plaintiffs*,

        v.

ZEALTHY INC.,

        *Defendant*.

Case No. 1:25-cv-06391-ALC

---

**DEFENDANT ZEALTHY INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
(212) 309-1000

*Attorneys for Defendant*
*Zealthy Inc.*

# **TABLE OF CONTENTS**

I.    BACKGROUND ........................................................................................................3

II.   LEGAL STANDARD..............................................................................................6

I.    ARGUMENT ...........................................................................................................7

   A.    Plaintiffs Lack Statutory Standing ........................................................... 7

       1.    Zone of Interests ...........................................................................7

       2.    Proximate Cause ...........................................................................11

   A.    Plaintiffs' Lanham Act Claim is Insufficiently Pled............................... 12

       1.    Lack of Substantiation ..................................................................12

       2.    Zealthy's Statements are Not False or Misleading ......................15

   B.    Plaintiffs' Lanham Act and Related State Claim is Preempted by the
         FDCA ...................................................................................................... 17

   C.    Plaintiffs' State Law Claim Should Be Dismissed for the Same Reasons
         as Their Lanham Act Claims ................................................................... 19

III.  CONCLUSION.......................................................................................................20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 4, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 4, 5

*Eli Lilly & Co. v. RXCompoundStore.com, LLC*,
  No. 23-CV-23586, 2024 WL 1554339 (S.D. Fla. Apr. 9, 2024) ................................... 1

*Eli Lilly & Co. v. Wells Pharm. Network, LLC*,
  No. 23-CV-576, 2024 WL 1641673 (M.D. Fla. Feb. 5, 2024) ...................................... 1

*Eli Lilly and Co. v. Roussel Corp.*,
  23 F. Supp. 2d 460 (D.N.J. 1998) ............................................................................... 13

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
  774 F.3d 192 (3d Cir. 2014) .......................................................................................... 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ..................................................................................................... 12

*Lupian v. Joseph Cory Holdings LLC*,
  905 F.3d 127 (3d Cir. 2018) .......................................................................................... 5

*Morrow v. Balaski*,
  719 F.3d 160 (3rd Cir. 2013) ......................................................................................... 5

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*,
  290 F.3d 578 (3d Cir. 2002) .......................................................................................... 6

*Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*,
  No. 23-CV-1503, 2023 WL 7385819 (M.D. Fla. Nov. 8, 2023) ................................... 1

*Novo Nordisk, Inc, v. Live Well Drugstore, LLC*,
  No. 23-cv-808, 2025 U.S. Dist. LEXIS 17792 (M.D. Fla. Jan. 30, 2025) .................... 1

*Novo Nordisk Inc. v. WELLHealth Inc.*,
  764 F. Supp. 3d 1193 (M.D. Fla. 2025) ........................................................................ 1

*Novo Nordisk, Inc. v. Wells Pharmacy Network, LLC*,
  No. 23-cv-689, 2025 U.S. Dist. LEXIS 25356 (M.D. Fla. Feb. 12, 2025) ................... 1

*Parks LLC v. Tyson Foods, Inc*,
  863 F.3d 220 (3d Cir. 2017) .......................................................................... 6

*Parks, LLC v. Tyson Foods, Inc.*,
  186 F. Supp. 3d 405 (E.D. Pa. 2016) ............................................................ 6

*POM Wonderful LLC v. Coca-Cola Co.*,
  573 U.S. 102 (2014) ...................................................................................... 13

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3d Cir. 1990) .......................................................................... 7

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) .......................................................................... 5

*Talley v. Wetzel*,
  15 F.4th 275 (3d Cir. 2021) ......................................................................... 4, 5

*Thompson v. W. States Med. Ctr.*,
  535 U.S. 357 (2002) ....................................................................................... 2

*U.S. v. Premo Pharm. Laboratories, Inc.*,
  511 F. Supp. 958 (D.N.J. 1981) ................................................................... 15

*United States v. Sullivan*,
  332 U.S. 689, 68 S. Ct. 331, 92 L. Ed. 297 (1948) ..................................... 13

**Statutes**

21 U.S.C. § 337(a) ............................................................................................. 2

21 U.S.C. § 352 ........................................................................................... 13, 15

21 U.S.C. § 372 .............................................................................................. 13

FDCA .................................................................................................. 2, 13, 14

Lanham Act ............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 10(c) ........................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ................................................................................. 2, 5

At the core of this lawsuit is the Plaintiffs Novo Nordisk A/S' and Novo Nordisk Inc.'s ("Plaintiffs") true objective—improperly using the Lanham Act to eliminate the lawful practice of compounding drugs like semaglutide. Plaintiffs have filed approximately 140 other similar lawsuits, all under the pretext of false advertising. Having had limited to no success in actions against compounding pharmacies,[1] Plaintiffs have instead chosen to pursue claims against clinics and technology companies—none of which typically make the compounded drugs at issue in this case.

Earlier this year, Food and Drug Administration ("FDA")-approved semaglutide medicines such as Ozempic and Wegovy were on the national drug shortages list.[2] "FDA understands that when a drug is in shortage, patients and healthcare professionals may look to compounded drugs as an option to get the medication they need."[3] This is because "when an FDA-approved drug is on FDA's drug shortages list some federal law restrictions may not apply, such as restrictions on compounding drugs that are essentially copies of approved drugs."[4] Those shortages ended in February of this year,[5] and now compounded semaglutide is available when, *among others*, there is a patient-specific prescription. *See, e.g.*, 21 U.S.C.A. § 353a (FDCA addressing pharmacy compounding). Accordingly, there was nothing illegal or improper about supplying compounded semaglutide injections by Zealthy Inc. ("Zealthy" or "Defendant").

---

[1]    *Novo Nordisk, Inc. v. Wells Pharmacy Network, LLC*, No. 23-cv-689, 2025 U.S. Dist. LEXIS 25356 (M.D. Fla. Feb. 12, 2025); *Novo Nordisk Inc. v. WELLHealth Inc.*, 764 F. Supp. 3d 1193 (M.D. Fla. 2025); *Novo Nordisk, Inc, v. Live Well Drugstore, LLC*, No. 23-cv-808, 2025 U.S. Dist. LEXIS 17792 (M.D. Fla. Jan. 30, 2025); *Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*, No. 23-CV-1503, 2023 WL 7385819 (M.D. Fla. Nov. 8, 2023); *see also Eli Lilly & Co. v. Wells Pharm. Network, LLC*, No. 23-CV-576, 2024 WL 1641673 (M.D. Fla. Feb. 5, 2024); *Eli Lilly & Co. v. RXCompoundStore, LLC*, No. 23-CV-23586, 2024 WL 1554339 (S.D. Fla. Apr. 9, 2024).

[2]    When the supply of a medicine is insufficient to meet public health and patient needs, the medicine is added to the national shortages list.

[3]    https://www.fda.gov/drugs/human-drug-compounding/compounding-when-drugs-are-fdas-drug-shortages-list

[4]    *Id.*

[5]    FDA announced that it will not take any action against 503A pharmacies before April 22, 2025, and against 503B pharmacies before May 22, 2025.

Plaintiffs are dissatisfied that, despite years of litigation and pressuring the FDA to remove Ozempic and Wegovy from the national shortages list, the sale of compounded semaglutide was and is still allowed by the FDA. Without FDA intervention,[6] Plaintiffs have no basis to bring a claim against Zealthy for the actual sale of compounded semaglutide. Knowing this, Plaintiffs now bring this case under the Lanham Act for ***false advertising***[7] as a pretext to prevent the lawful sale of compounded semaglutide—after all, how can patients buy a product without knowledge of its existence through proper advertisement?

Despite this approach, Plaintiffs lack standing to assert a false advertising claim. In particular, the statements on Zealthy's website do not harm Plaintiffs' reputation. Additionally, Plaintiffs have not demonstrated any loss of sales, especially since most compounding patients would not have qualified for insurance coverage. Furthermore, Zealthy operates as a technology platform, not as a medical provider or prescriber of compounded semaglutide. As a result, there is no connection between the statements on Zealthy's website and any alleged injury claimed by Plaintiffs.

Plaintiffs allege that purportedly false statements on Zealthy's website relate to unsupported claims about safety and efficacy of semaglutide. Even if Plaintiffs are correct, however, unsubstantiated claims are not actionable under false advertising law without establishing actual falsity. Plaintiffs cannot bridge this gap because they have never obtained or tested any compounded products associated with Zealthy. As a result, they cannot assert any

---

[6]     *See* 21 U.S.C. § 337(a) (instructing that "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States.").

[7]     To be clear, there is no prohibition on advertising compounded semaglutide. *See, e.g.*, *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 376 (2002) (striking down the ban on advertising compounded medications as unconstitutional).

factual claims regarding the efficacy of those products, and thus cannot demonstrate any falsity or deception in Zealthy's advertising.

Lastly, in order to adjudicate Plaintiffs' Lanham Act claims, this Court will be required to step into the shoes of the FDA and decide if the compounded semaglutide associated with Zealthy meets the FDA's compounding requirement for 503A pharmacies, including making determinations regarding its safety and efficacy. These issues fall squarely within the FDA's exclusive jurisdiction, thereby rendering Plaintiffs' claims preempted. Granting Plaintiffs' request would inherently lead this Court to violate the principles underlying the Corporate Practice of Medicine, which ensure that clinical decisions are made based on medical necessity rather than corporate profit. Decisions regarding the efficacy of medication should be reserved for medical providers and the appropriate regulatory agencies.

Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), Zealthy hereby moves this Court to dismiss all claims alleged by Plaintiffs in their Complaint.

## I.      **BACKGROUND**

Plaintiffs—multi-billion dollar companies, with a market capitalization exceeding $570 billion—are the makers of Ozempic and Wegovy.[8] These drugs are FDA-approved semaglutide-based medicines known for their ability to help people lose weight. Plaintiffs, however, have recently lost significant market share due to their inadequate manufacturing capabilities and fierce competition from their direct competitor, Eli Lilly.[9] To address this issue, unfortunately, Plaintiffs

---

[8]     *See* Novo Nordisk's market value of $570 billion is now bigger than the entire Danish economy—creating a 'Nokia risk' for Denmark, *available at* https://fortune.com/europe/2024/05/01/novo-nordisk-market-value-570-billion-bigger-than-danish-denmark-economy/.

[9]     *See, e.g.*, Novo Nordisk cuts profit outlook after weaker sales of weight-loss drug Wegovy, *available at* https://www.theguardian.com/business/article/2024/aug/07/novo-nordisk-cuts-profit-outlook-after-weaker-sales-of-weight-loss-drug-wegovy (discussing Plaintiffs' continued periodic supply constraints and "concerns over competition from Eli Lilly").

have attempted to suppress legitimate marketplace competition through a litigation campaign directed not towards the pharmacies that compound the medicine, but rather towards the health and beauty clinics and technology companies. Over the past two years, Plaintiffs have sued more than 140 such providers all around the country.

Zealthy is a technology company that operates an online platform connecting patients with independent healthcare providers for treatment of various health issues, including weight loss, skin care, hair loss, sleep problems, birth control, and mental health concerns.[10] With a focus on improving overall well-being, Zealthy offers a range of services, such as facilitating telehealth consultations that enable patients to discuss medical matters with independent, licensed healthcare professionals. Additionally, Zealthy assists with the logistics involved in the sale of prescribed medications. (Id.)

To obtain any medication, including semaglutide, patients visit Zealthy's website to request a consultation with a physician. After completing a comprehensive health and wellness questionnaire, patients may meet with an independent medical provider who evaluates their eligibility for a prescription, such as compounded semaglutide for weight loss. "If GLP-1 medication, such as Zepbound, Wegovy, or Mounjaro, is prescribed, [Zealthy's] coordination team can work with [customers] to get [the] medication covered by insurance," or "[Zealthy] also [has] affordable options for GLP-1 medications if [a customer's] insurance does not cover the

---

[10]     The Complaint contains numerous references, screenshots, links, and citations to the Zealthy website, and the Court may therefore consider the entire website as incorporated by reference into the Complaint. (*See* Zealthy, *Terms of Use*, https://www.getzealthy.com/terms-of-use (last accessed October 22, 2025) ("Zealthy itself does not provide medical care, prescribe medications, or act as a healthcare provider. Zealthy is a technology platform that facilitates connections between independent healthcare providers and patients through synchronous and asynchronous telecommunications technologies. All medical services, including prescriptions and treatment decisions, are provided solely by independent healthcare providers who are not employed by or agents of Zealthy. Zealthy does not guarantee that a prescription will be written or that any particular treatment will be recommended.")).

medication . . ."[11] If the independent medical provider prescribes a medication such as semaglutide, that prescription is filled by an independent pharmacy. To be clear, ***Zealthy is neither a medical provider nor a pharmacy***.

On September 14, 2025, Zealthy received a copy of a Complaint (filed on August 4, 2025) alleging false advertising and misleading representations related to semaglutide injections. The Complaint makes a number of generalized allegations relating to compounded drugs, including calling into question their safety and efficacy solely because they are not FDA-approved. (*See, e.g.*, Dkt. 1 ("*Compl.*"), ¶¶ 30-38 (discussing issues relating to compounding in general)).

For example, the Complaint alleges that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs." (*Id.* at ¶ 36.) Plaintiffs then quote general statistics regarding adverse effects of entirely unrelated drugs and semaglutide drugs that are not related to Zealthy. (*See id.* at ¶¶ 37, 42-45). Plaintiffs make no specific allegations about the safety or efficacy of the semaglutide drugs associated with Zealthy.

The Complaint also alleges that general statements made on Zealthy's website regarding semaglutide are false and misleading. (*See id.* at ¶¶ 48-69 (discussing Zealthy's advertising without any reference to Zealthy's products or their composition).) At no point does the Complaint provide any particularized allegation about ***the products associated with Zealthy, their composition, and whether there is any distinction between these products and Plaintiffs' semaglutide medicines such as Ozempic and Wegovy***. Plaintiffs do not provide any details about how Zealthy's statements and offerings could have deceived the consumers. In fact, Plaintiffs' allegations of deception are so generic that they could apply to any one of the nearly 140 other defendants they have sued in the U.S.

---

[11]    *See* https://www.getzealthy.com/weight-loss-faq (last visited October 22, 2025).

Plaintiffs' allegations invite the reader to draw an incorrect and unsupported assumption regarding the safety and efficacy of semaglutide drugs provided to Zealthy's patients (based on allegations about compounding in general), and then, based on that faulty assumption, conclude that the generalized statements about semaglutide drugs on Zealthy's website are somehow false and misleading. Not only are the pleadings in the Complaint insufficient to draw the required assumption, but reaching a conclusion as to falsity of the challenged statements would require this Court to act as the FDA and make determinations as to the safety and efficacy of the semaglutide drugs provided to Zealthy's patient base. Accordingly, Zealthy respectfully requests the Court to decline jurisdiction over this matter.

## II.  **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Talley v. Wetzel,* 15 F.4th 275, 286 (3d Cir. 2021). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 556 U.S. at 678. A complaint must contain factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Although the court is required to accept the allegations in the complaint as true, it is "not required to accept [c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 85 (S.D.N.Y. 2024) (citing *Porter v. Bunch*, No. 16-CV-5935, 2019 WL 1428431 (S.D.N.Y. Mar. 29, 2019)). A court may consider documents which are attached to or submitted with the complaint, as well as legal arguments presented in memorandums or briefs and arguments

of counsel. Further, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. (*See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").)

A defense of preemption is properly considered on a motion to dismiss because all preemption claims are "conclusion[s] of law," and are therefore properly decided absent a full factual record. *S & R Dev. Estates, LLC v. Town of Greenburgh, New York*, 336 F. Supp. 3d 300, 308 (S.D.N.Y. 2018). Indeed, dismissal is appropriate under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim. *See Michael Grecco Productions, Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024), *cert. denied,* No. 24-768, 2025 WL 1678984 (U.S. June 16, 2025).

I.    **ARGUMENT**

A.    **Plaintiffs Lack Statutory Standing**

To establish standing under the Lanham Act, a plaintiff must satisfy both a "zone of interests" and a "proximate cause" requirement. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.* ("*Lexmark*"), 572 U.S. 118, 131-32 (2014). The first prong requires an adequate allegation of "an injury to a commercial interest in reputation or sales." *Id.* The second prong requires that a plaintiff plead, with the requisite particularity, "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising, which occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.*

1.    **Zone of Interests**

Plaintiffs' Complaint offers a single conclusory allegation of harm (repeated in connection with each cause of action): "[t]he above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs." (*Compl*. at ¶¶ 79, 90.) This generic

conclusory statement is insufficient to state the reputational or sales injury necessary to establish that Plaintiffs are within the zone of interests.

While it is true that Plaintiffs' single injury statement recalls the "above-described acts of Defendant," those described acts pertain to an alleged lack of support for statements made regarding the efficacy and/or safety of compounded semaglutide. These "above-described acts of Defendant" are entirely unrelated to Plaintiffs' reputation. Indeed, nothing in the Complaint alleges or even implies that any statement on Zealthy's website could possibly cause reputational harm to Plaintiffs. If anything Zealthy's statements are using Plaintiffs' products as a positive benchmark. (*See, e.g.*, *id*. at ¶ 51 ("If appropriate, your clinician might prescribe FDA-approved medications like Wegovy . . . .") Thus, Plaintiffs do not and cannot allege any injury to reputation.

Without an injury to reputation, Plaintiffs' only means for establishing standing is through an injury to sales. *Eli Lilly and Company v. Willow Health Services, Inc.* is highly relevant to this inquiry as it closely mirrors the facts of this case and the issues regarding standing. *Eli Lilly and Co. v. Willow Health Services, Inc.*, 2025 WL 2631620 (C.D. Cal. Aug. 29, 2025).[12] In *Willow Health*, Eli Lilly, a maker of FDA approved prescription weight loss medication, sued a technology platform that connects users with physicians and pharmacies for alleged false advertising. *Willow Health*, 2025 WL 2631620 at 1. The defendant moved to dismiss the case on the basis that Eli Lilly lacked standing under the Lanham Act. The court there found that Eli Lilly failed to sufficiently allege an injury to sales, stating:

> Plaintiff has failed to plead a single lost sale as a result of Defendant's alleged false advertising. Plaintiff does not allege whether sales of its tirzepatide medications decreased, when that decrease occurred, or to whom Plaintiff lost sales. Further, Plaintiff has failed to allege a single instance, either via survey or testimonial

---

[12]    Both Eli Lilly and Plaintiffs have engaged in litigation campaigns against marketing companies for weight loss medications. The complaints in these cases are often very similar, with many using a standardized complaint structure and only switching out some defendant-specific details. So while *Willow Health* is pending in the Central District of California, it is highly relevant to this case.

evidence, where a consumer decided to select a compounded tirzepatide provided by Defendant instead of Plaintiff's products because of any alleged false advertisements made by Defendant.
. . .
Plaintiff has provided no plausible "chain of inferences" showing how Defendant's advertisements could harm Plaintiff's business.

(*Id.* at 8.)

Similar to *Willow Health*, Plaintiffs here fail to allege direct injury to sales as well. Plaintiffs argue that Zealthy's allegedly false and misleading statements "are likely to have caused and continue to cause mistake and deception in the marketplace" and "[are] likely to have exposed and continue to expose patients to unnecessary risk" (*Compl.* at ¶¶ 71, 72.)  Neither of these allegations, even if true, pertain to Plaintiffs' sales, much less a sales-based injury which can be demonstratively attributed to Zealthy's business activity.  Plaintiffs also allege that the statements on Zealthy's website "attract customers and generate revenues and profits." (*Id.* at ¶ 70.)  Even this, however, fails to state a direct injury to Plaintiffs' sales because just as in *Willow Health*, it does not follow that sales of compounded semaglutide facilitated through Zealthy's website have any negative impact on Plaintiffs sales, and Plaintiffs do not make any such allegation.  It is undeniable that Plaintiffs' medications are far more expensive than compounded semaglutide.  Thus, in cases where a customer's insurance will not cover Plaintiffs' medications, the patients' decision is often between foregoing medication altogether or purchasing a more affordable compounded semaglutide (if prescribed by an independent medical professional).  Plaintiffs have no basis to allege any connection between Zealthy's sales and a hypothetical loss in sales of Plaintiffs' medications.  Accordingly, Plaintiffs have not alleged an injury to sales necessary to satisfy the zone of interest test for Lanham Act standing.

A presumption of commercial injury can exist when a defendant is a direct competitor.  *See Souza v. Exotic Island Enterprises, Inc.*, 68 F.4th 99, 119 (2d Cir. 2023).  Zealthy, however, is not

a direct competitor of Plaintiffs. As noted above, Zealthy is a technology platform that connects customers and independent healthcare providers. Zealthy does not prescribe any medications and has no say in whether medications are prescribed, and if so, which medications. Further, Zealthy is not a pharmacy and does not create compounded semaglutide or fill prescriptions. Importantly, as noted on Zealthy's website, an independent healthcare provider may prescribe Plaintiffs' own medications, at which point Zealthy will support the logistics of getting that prescription to the customer. (*See, e.g.*, https://www.getzealthy.com/weight-loss-faq ("If GLP-1 medication, such as Zepbound, Wegovy, or Mounjaro, is prescribed, [Zealthy's] coordination team can work with [customers] to get [the] medication covered by insurance . . .")). Zealthy does not become Plaintiffs' direct competitor when it also supports the logistics of getting compounded semaglutide prescriptions to customers, nor is it a direct competitor when it supports the logistics of getting Plaintiffs' medications to its customers. This is especially true where Plaintiffs have not provided any allegations establishing that compounded semaglutide are a direct competitor to Plaintiffs' medications. Plaintiffs have provided no evidence or allegations that customers cross-shop Plaintiffs' medications with compounded semaglutide. As noted above, often the decision to take Plaintiffs' medications hinges solely on whether a customer's insurance will cover the cost, and Zealthy has no control over the health insurance industry or coverage decisions made by various insurers. Simply put, a middle-man in healthcare services is not a direct competitor with Plaintiffs or their medications.

Critically, a presumption of commercial injury stemming from direct competition can be rebutted. *See, e.g.*, *Willow Health* at 7. The court in *Willow Health* found this presumption rebutted based on the plaintiff's complete lack of pleading any lost sales or that sales declined as a result of the defendant's statements. *See id.* at 8 ("Even if Plaintiff did not have data about lost

sales, Plaintiff could have presented testimony or survey evidence that indicated consumers may be swayed one way or another to Defendant's product. Instead, Plaintiff only provides conclusory allegations.").)

Here, the Complaint is similar to the complaint in *Willow Health* in that it does not contain any allegations of lost sales, or that any lost sales are due to Zealthy's statements or advertising efforts. It also fails to present testimony or survey evidence indicating that consumers may have purchased compounded semaglutide instead of Plaintiffs' medications as a direct result of Zealthy's statements. Instead, Plaintiff only provides a general conclusory statement that it has suffered some sort of unquantified harm. Plaintiff's pleadings fall well short of the standard for establishing the zone of interests prong of the standing test, and just like in *Willow Health*, this court should also dismiss Plaintiffs' claims on this basis.

### 2.    Proximate Cause

In addition to failing the zone of interests test, Plaintiffs' Complaint also fails the proximate cause prong of the standing test under *Lexmark*. "Proximate causation may be adequately alleged when 'there is likely to be something very close to a 1:1 relationship between' a plaintiff's lost sales and the sales diverted to a defendant." *Willow Health* at 9 (citing *Lexmark* 572 U.S. at 139).

In *Willow Health*, the court stated:

> Plaintiff's complaint fails to plead facts showing anything like a 1:1 relationship between Plaintiff's lost sales and any potential sales diverted to Defendant due to its false advertising. Plaintiff pleads no direct link or even any facts suggesting some chain of inferences between a consumer (a patient) seeing Defendant's advertisement and then buying compounded medication instead of Plaintiff's medication. Even further, Plaintiff ignores the simple fact that regardless of what an advertisement says or what a consumer wants to buy, obtaining a prescription medication requires a physician to prescribe it. A physician prescribing a compounded medication is the proximate cause of a consumer/patient using compounded medication instead of Plaintiff's medication . . . Thus, Plaintiff's proximate cause arguments fail because Defendant's advertisements are not what "causes them to withhold trade from the plaintiff."

*Id.* at 9 (citing *Lexmark*, 572 U.S. at 133).

Here, the facts closely mirror those in *Willow Health*. As noted above, Plaintiffs' Complaint fails to plead any lost sales, much less lost sales on a 1:1 basis with sales diverted to Zealthy. As in *Willow Health*, Plaintiffs here plead no direct link or even any facts suggesting some chain of inferences between a consumer seeing Zealthy's statements and then buying compounded semaglutide instead of Plaintiffs' medication. Indeed, as noted above, a more likely cause of a consumer buying compounded semaglutide as opposed to Plaintiffs' medication, if any such exists, would be attributed to the vast difference in cost of these two medications. Moreover, Plaintiffs here also ignore the simple fact that regardless of what Zealthy's statements say or what a consumer wants to buy, obtaining a prescription medication requires a physician to prescribe it. Critically, as noted in *Willow Health*, a physician prescribing a compounded semaglutide is the proximate cause of a consumer/patient using compounded semaglutide instead of Plaintiffs' medication. And Zealthy has no control over the physicians that it matches with consumers. Plaintiffs' Complaint falls woefully short of establishing the requisite proximate cause to establish standing under the Lanham Act, and for this reason, Plaintiffs' Complaint must be dismissed.

### A.    Plaintiffs' Lanham Act Claim is Insufficiently Pled

#### 1.    Lack of Substantiation

"[E]ach plaintiff bears the burden of showing that [a] challenged advertisement is false and misleading, not merely that it is unsubstantiated by acceptable tests or other proof." *Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 114, 119 (2d Cir. 1984) (internal citation omitted) (citing *Toro Co. v. Textron, Inc.*, 499 F.Supp. 241, 253 (D.Del.1980)). A lack of substantiation by itself does not render a claim false or misleading under the Lanham Act. *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 455-56 (E.D.N.Y. 2013).

In *Willow Health*, which mirrors this case closely, the plaintiff argued that the defendant's statements were false and misleading because they pertain to safety and efficacy from tests that are attributable to the plaintiff's specific medications, and not the defendant's specific tirzepatide medication. *Willow Health* at 14.  The court rejected the plaintiff's arguments because "nowhere in the Complaint is it alleged that Defendant advertised that its products were clinically tested." *Id.*  "Rather, Defendant refers to the clinical testing done in reference to Tirzepatide [generally]." *Id.*

The facts at issue here are the same as those in *Willow Health*.  For example, Plaintiffs allege that "[i]n promotional materials on its website, Defendant claims: 'Medications with the active ingredient semaglutide have shown 15-20% average weight loss.'"  (*Compl.* at ¶ 61.) Plaintiffs then allege "Defendant has not conducted any placebo-controlled or clinical studies on its Unapproved Compounded Drugs and is instead falsely and misleadingly referring to studies of Novo Nordisk's FDA-approved medicines to promote its Unapproved Compounded Drugs." (*Id.* at ¶ 63.)  Plaintiffs' allegation is that Zealthy's statement is false and misleading solely because there is a lack of a study to support the statement; however, such a study is not necessary where Defendant is not making the claim about the compounded medication provided to patient, but rather about medications using the active ingredient of semaglutide.  This is the very definition of a lack of substantiation claim, and Plaintiffs make this claim without any attempt to allege or establish actual falsity.  Moreover, as was the case in *Willow Health*, Zealthy also did not allege that its products are clinically tested.  Instead, Zealthy's statement clearly and explicitly pertains to semaglutide and medications with an active ingredient of semaglutide generally.  Accordingly, Plaintiffs' false advertising claim should be dismissed as an unsupported lack of substantiation claim.

While *Willow Health* is directly analogous to this case—stemming from a similar weight loss litigation campaign based on a similar medication offered by Plaintiffs' competitor—Plaintiffs attempt to rebut the insufficiency of their lack of substantiation claim by pointing to two unrelated cases in their letter to the Court on November 7, 2025, *McCracken v. KSF Acquisition Corp.*, No. 5:22-cv-01666, 2023 WL 5667869 at *1, 4 (C.D. Cal. Apr. 4, 2023) and *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 703–04 (N.D. Cal. 2022).

As an initial matter, it should be noted that *Willow Health* was decided after *McCracken* and both were in the central district of California. Thus, if *McCracken* was not relevant to the question of substantiation claims in *Willow Health*, it is not relevant to that question here. Moreover, in *McCracken*, the defendant sold a SlimFast product with a claim that the product was clinically proven to lose weight, but that the clinical test related to a SlimFast weight loss plan, not the specific product on which the claim was printed. As discussed above with respect to *Willow Health*, Zealthy did not allege that its products are clinically tested, only that semaglutide, the active ingredient in compounded semaglutide (and in Plaintiffs' medications), has been shown to result in weight loss. Thus, the claim at issue in *McCracken* is distinguishable from that in *Willow Health* as well as Plaintiffs' claim(s) against Zealthy.

*Guardant Health* is likewise distinguishable from Plaintiffs' claims against Zealthy (and those in the analogous *Willow Health*). In *Guardant Health*, there was dispute as to an interpretation of the results of a scientific study as applied to specific product claims. *See Guardant Health*, 580 F. Supp. 3d at 704 ("For Guardant's marketing statement about longitudinal sensitivity be truthful and supported by the Parikh Study, Natera alleges that it should have referred to the 69% figure and not the 91% 'surveillance' sensitivity."). Here, there is no dispute as to the

results of a scientific study, so *Guardant Health* is entirely unrelated to Plaintiffs' lack of substantiation claims.

### 2.    Zealthy's Statements are Not False or Misleading

False advertising claims under the Lanham Act require a plaintiff to establish a number of factors, the first of which is that a defendant made a false or misleading statement of fact concerning his product or another's. *Sussman–Automatic Corp. v. Spa World Corp.*, 15 F.Supp.3d 258, 269 (E.D.N.Y. 2014). For a statement to be literally false or false on its face, it must conflict with reality. *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir. 1999). Upon a showing that an advertisement is literally false, consumer deception is presumed and no further inquiry is needed on the advertisement's impact on the public. *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). Under the "literally false" theory, "the message must be unambiguous; if the representation 'is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false,' and the advertisement is actionable only upon a showing of actual consumer confusion." *Merck Eprova AG v. Gnosis S.p.A.*, 901 F.Supp.2d 436, 450 (S.D.N.Y. 2012).

Here, the Complaint alleges a number of statements made by Zealthy about safety and efficacy of semaglutide are false or misleading. These statements, however, are literally true. For example, Plaintiffs take issue with the statement that "[i]f appropriate, your clinician might prescribe FDA-approved medications like Wegovy or its active ingredient, semaglutide." (*Compl.* at ¶ 51.) This statement is literally true. Zealthy has no control over prescriptions as the healthcare professionals are independent. Moreover, the statement specifically links the FDA-approval to Plaintiffs' medication (which may be prescribed).

Similarly, Plaintiffs point to the statement that "[a]t Zealthy, we offer FDA-approved weight loss medications, including semaglutide (often branded as Wegovy or Ozempic) and

tirzepatide . . .” as allegedly being false and misleading. (*Id.* at ¶ 52.) Again, this statement is literally true. Zealthy does facilitate getting prescribed medications to customers, and this includes FDA approved weight loss medications including semaglutide branded as Wegovy or Ozempic.

Plaintiffs also allege that “[m]edications with the active ingredient semaglutide have shown 15-20% average weight loss” is false and misleading. Once again, this general statement about the efficacy of semaglutide is literally true and is not specific to the compounded semaglutide associated with Zealthy.

In paragraph 65 of the Complaint, Plaintiffs allege that the statement “[n]o insurance coverage? Get affordable semaglutide (main ingredient in Ozempic® & Wegovy®) at an affordable price” is false and misleading. (*Id.* at ¶ 65.) As with the other examples, this statement is also literally true. Semaglutide is the main (active) ingredient in Plaintiffs’ medications. It is also true that compounded semaglutide costs less than Plaintiffs’ medications.

Incredibly, in paragraph 66 of the Complaint, Plaintiff alleges that saying “semaglutide is the active ingredient in Wegovy and Ozempic” is false and misleading. (*Id.* at ¶ 66; *see also* ¶ 67 (making the same allegation for a statement appearing elsewhere on Zealthy’s website.) But it is literally true that semaglutide is the active ingredient in Plaintiffs’ medications.

The Complaint cites additional examples, but each is literally true and therefore does not satisfy the first element of a false advertising claim under the Lanham Act. Furthermore, because Zealthy’s statements are not literally false, Plaintiffs must allege that the statements have a tendency to mislead consumers. Plaintiffs, however, have not pleaded any facts demonstrating that consumers are “actually” confused or misled by Zealthy, as required for a misleading false advertising claim. Accordingly, the Court should dismiss Plaintiffs’ claims on this basis as well.

**B.    Plaintiffs' Lanham Act and Related State Claim is Preempted by the FDCA**

Plaintiffs' Complaint must be dismissed as the claims fall squarely within the expertise and jurisdiction of the FDA. The FDCA "was designed primarily to protect consumers from dangerous products." *See United States v. Sullivan*, 332 U.S. 689, 696, 68 S. Ct. 331, 335, 92 L. Ed. 297 (1948). The FDCA achieves this, in part, by regulating the labeling and advertising of drugs. *See* 21 U.S.C. § 352. Congress charged the FDA with the responsibility of investigating potential violations of the FDCA, and gave it a number of enforcement mechanisms, including injunction proceedings, civil and criminal penalties, and seizure. *See* 21 U.S.C. §§ 332-34, 372. Enforcement is not through a private cause of action, but instead is almost exclusively through the actions of the FDA. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014).

Plaintiffs' Lanham Act claim is essentially a disguised effort to usurp the role of the FDA by attempting to enforce the FDCA against Zealthy. Courts consistently recognize that the FDCA preempts Lanham Act claims that merely attempt to enforce FDA regulations, rather than address actionable false advertising.  For example, the FDCA precludes claims asserting that a defendant failed to disclose the FDA's lack of approval for its product. *See, e.g.*, *PDK Lab'ys, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997); *Merck & Co. v. Mediplan Health Cons., Inc*., 425 F. Supp. 2d 402, 417-18 (S.D.N.Y. 2006). When considering the competing interests of preemption under the FDCA on one hand and giving full effect to federal statutes such as the Lanham Act on the other hand, Courts in the Second Circuit have held that "preclusion is required not only when a plaintiff 'seeks to enforce directly the FDCA through the Lanham Act' but also when a plaintiff attempts to maintain a Lanham Act claim [that] requires direct application or interpretation of the FDCA or FDA regulations." *Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*, 104 F. Supp. 3d 348, 352 (S.D.N.Y. 2015), *aff'd*, 836 F.3d 153 (2d Cir. 2016), and *aff'd*, 843 F.3d 48 (2d Cir. 2016).

Here, Plaintiffs attempt to litigate the efficacy and safety of the compounded semaglutide associated with Zealthy under the guise of a false advertising claim. Plaintiffs allege that compounded drugs **can be** less safe or less effective. (*See Compl*. at ¶ 36) ("compounded drugs 'do not have the same safety, quality, and effectiveness **assurances** as approved drugs.'" (emphasis added)). Plaintiffs cannot expressly allege that the semaglutide drugs associated with Zealthy have lower safety, quality, and efficacy because Plaintiffs have no data supporting this conclusion. Instead, Plaintiffs merely use generalized statements to imply unestablished quality and efficacy problems with the semaglutide drugs associated with Zealthy. (*See, e.g.*, *id.* at ¶¶ 42-45 (discussing adverse events from other non-FDA approved compounded drugs)). For this reason, Plaintiffs' allegations that patients who believe the information on Zealthy's website are exposed to unnecessary safety risks is also inconclusive. (*See Compl*. at ¶ 72.)

The statements highlighted in the Complaint pertain to semaglutide generally, but even if the statements were specific to the compounded drugs at issue, Plaintiffs' false advertisement claims pertaining to safety or efficacy are precluded under the FDCA. This is true at least because evaluating these allegations would require the Court to make technical and medical determinations regarding the safety and efficacy of **compounded** drugs, including the impact of specific manufacturing methods on safety and efficacy, which are more properly within the exclusive purview of the FDA—bearing in mind that the distribution and sale of compounded drugs are legal, and that Zealthy itself is not a compounding pharmacy.

Relatedly, Plaintiffs ask this Court to decide whether it is appropriate for Zealthy to use data about Ozempic and Wegovy in advertising compounded versions of these drugs. However, the FDA has regulatory authority over the advertising of compounded drugs. *See* 21 U.S.C. § 352(bb) (prohibiting the advertising or promotion of a compounded drug if it is false or misleading

in any respect); *see also Premo Pharm. Laboratories, Inc. v. U.S.*, 629 F.2d 795, 804 (2d Cir. 1980) ("The rule that the FDA rather than the courts must first determine the safety and effectiveness of a drug is but an extension of the general principle that the agency is usually better equipped by reason of its expertise to make the determination than the court.").

Critically, the Second Circuit has held that where disputes arise regarding whether a drug is "generally recognized" by experts as safe and effective, the district court's role is limited to determining whether such recognition exists, not to independently assess the drug's safety or efficacy. *Id.* at 803. Semaglutide (in Plaintiffs' drugs) is recognized by the FDA as generally safe, at least, because it has approved Plaintiffs' semaglutide drugs. The medications at issue in this litigation involve a ***compounded*** form of semaglutide. The FDA, with its specialized scientific expertise, is tasked with conducting any necessary investigations and evaluations to resolve any dispute as to whether the ***compounded*** semaglutide associated with Zealthy is not generally safe or differs from those included in Ozempic and Wegovy. *See id.* ("The entire statutory scheme envisages that the FDA will perform the difficult task of investigation and scientific evaluation usually required to determine whether a drug product is safe and effective.").

Accordingly, Plaintiffs' Lanham Act claims are preempted by FDCA, and they should be dismissed.

### C.    Plaintiffs' State Law Claim Should Be Dismissed for the Same Reasons as Their Lanham Act Claims

Plaintiffs' state-law claim is based on the same underlying factual allegations as Plaintiffs' Lanham Act claims. Thus, to the extent Plaintiffs Lanham Act claims are preempted by the FDCA, then so too is the state-law claim. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Similarly, to the extent that Plaintiffs lack Lanham Act standing or that their Lanham Act claims are insufficiently pled, those same deficiencies apply to Plaintiffs' state-law claims.

**III.**    **<u>CONCLUSION</u>**

For the reasons stated above, Zealthy respectfully requests that Plaintiffs' claims be dismissed with prejudice.


Dated: <u>December 15, 2025</u>                     Respectfully Submitted,

                                                    <u>/s/ *Armin Ghiam*                    </u>
                                                    Armin Ghiam
                                                    HUNTON ANDREWS KURTH LLP
                                                    200 Park Avenue
                                                    New York, NY 10166
                                                    Tel.: (212) 309-1000
                                                    Fax: (212) 309-1100
                                                    Email: aghiam@Hunton.com

                                                    *Counsel for Defendant*
                                                    *Zealthy Inc.*

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this brief complies with the word-count limitations of Local Civil Rule 7.1 and Individual Rule 3(C) because it contains 6,137 words, including material contained in footnotes, and excluding the parts exempted by Local Civil Rule 7.1. In preparing this certificate, I have relied on the word count of the word-processing program used to prepare this brief.

/s/      *Armin Ghiam*
          Armin Ghiam
          HUNTON ANDREWS KURTH LLP

## CERTIFICATE OF SERVICE

I hereby certify that, on December 15, 2025, I filed a true and correct copy of the foregoing document via the Court's electronic-filing system, which will send electronic notification of such filing to all counsel-of-record in this action.

/s/      *Armin Ghiam*
          Armin Ghiam
          HUNTON ANDREWS KURTH LLP